IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| APPLIED BIOKINETICS LLC § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | Civil Action No.  6:21-cv-556 |
| § | |
| CVS PHARMACY, INC., § | JURY DEMANDED |
| § | |
| *Defendant*. § | |

# PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Applied Biokinetics LLC ("ABK" or "Plaintiff") files this Complaint for patent infringement against CVS Pharmacy, Inc. ("CVS" or "Defendant").

## THE PARTIES

1. Plaintiff ABK is a Texas limited liability company with a place of business in Spring, Texas.

2. On information and belief, Defendant CVS Pharmacy, Inc. is a corporation organized and existing under the laws of Delaware.

3. On information and belief, CVS Pharmacy, Inc. is registered to do business in Texas, and may be served through its registered agent for service of process, CT Corporation System, 1999 Bryan St., Suite. 900, Dallas, Texas 75201.

4. On information and belief, CVS owns and operates pharmacies and retail medical clinics inside Target Corporation's stores.

## JURISDICTION AND VENUE

5. This is an action for patent infringement arising under the patent laws of the United States, Title 35, United States Code. Jurisdiction as to these claims is conferred on this Court by 35 U.S.C. §§1331 and 1338(a).

6. This Court has personal jurisdiction over CVS because, directly or through intermediaries, CVS has committed acts within the Western District of Texas giving rise to this action and/or has established minimum contacts with the Western District of Texas such that the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice.

7. Venue is proper in this District under 28 U.S.C. §§ 1391(b), (c), (d) and 1400(b). CVS is registered to do business in Texas and, upon information and belief, CVS has transacted business in this District and has committed acts of direct and indirect infringement in this District by, among other things, importing, offering to sell, and selling products that infringe ABK's patents, as explained below. CVS maintains regular and established places of business in the Western District of Texas, including at 500 Congress Ave, Austin, Texas 78701; 601 N. Valley Mills Drive, Waco, Texas 76710; 1513 S. Valley Mills Drive, Waco, Texas 76711; 5401 Bosque Blvd., Waco, Texas 76710; and 820 S. 5th St., Waco, TX 76706, shown below:



8. In addition, CVS has placed or contributed to placing infringing products into the stream of commerce via an established distribution channel knowing or understanding that such products would be sold and used in the United States, including in the Western District of Texas.

9. This Court has specific personal jurisdiction over CVS at least in part because CVS conducts business in this Judicial District. ABK's causes of action arise, at least in part, from CVS's contacts with and activities in the State of Texas and this Judicial District. Upon information and belief, the CVS has committed acts of infringement within the State of Texas and this Judicial District by, *inter alia*, directly and/or indirectly making, using, selling, offering to sell, or importing products that infringe one or more claims of ABK's patents described below. CVS's infringing acts within this Judicial District give rise to this action and have established minimum contacts with the forum state of Texas. On information and belief, CVS also has derived substantial revenues from infringing acts in this Judicial District, including from the sale and use of infringing products including, but not limited to, the products accused of infringement below.

## FACTUAL BACKGROUND

10. ABK was founded in 2008 by Donald P. Bushby, an engineer and prolific inventor who has invented and validated several innovative technology solutions.

11. In the early 2000's, Mr. Bushby had learned about the activity of "roller-skiing," a sport like rollerblading utilizing two inline wheels supporting an elongated ski-like structure. To slow down, users of the devices needed to squat down and pull upward on handles attached to cables. Mr. Bushby developed an improved braking approach that simulated a "snowplow" effect by rotating the binding to translate into a braking force, while the skis remained parallel. While developing and testing his invention, Mr. Bushby developed a muscular injury that persisted for weeks, and led to excruciating pain. In discussing his injury with his doctor, Mr. Bushby learned that he had a micro-tear in the fascia of his injured muscle resulting in inflammation and pain, the

standard treatment for which was to receive cortisone injections. Mr. Bushby refused the injections, believing that such treatment was painful, expensive, and did not properly address the root issue involving the damaged fascia. Mr. Bushby went on to perform research at his local library to learn more about the body, biomechanics, stress, and the tough connective tissue known as fascia. He concluded that there was a need for a system to: treat pain, provide direct anatomical support, and protect fascia from damaging stress, thus allowing tissue healing and rapid pain recover that was inexpensive, fast acting and easy to apply at home. This led Mr. Bushby to develop a novel system which included pre-cut parts with an adhesive layer and removable cover layer for ease of handling and self-application. The system includes a single woven support layer with high strength and low elongation in at least one direction, such that when it is applied to the body part it can provide support and reduce stress on the underlying fascia.

12. Mr. Bushby founded Applied BioKinetics to develop and commercialize his ideas.

13. ABK is an inventor-controlled entity.

14. ABK is a practicing entity that has commercialized its intellectual property through licensing and also through the development and sale of products. For example, ABK developed the FasciaDerm line of products as show here:



## TECHNOLOGY BACKGROUND

15. Several of the products accused of infringement below are products that are used to treat fascia injury.

## EXEMPLARY PRODUCTS

16. Examples of products accused of infringement (the "Exemplary Products") below include:

- Target-brand Kinesiology Tape ("Target Tape")

- CVS-brand Kinesiology Tape

- CVS-brand Pro Strength Kinesiology Tape (together with the CVS product above, "CVS Tape")

- KT Tape (original)

- KT Tape Gentle

- KT Tape Pro

- KT Tape Pro Extreme (together with the KT products above, "KT Tape")

- StrengthTape (products sold in pre-cut rolls and also the "StrengthTape Kinesiology Tape Kit – Ankle & Foot", collectively "StrengthTape")

## COUNT I

## INFRINGEMENT OF U.S. PATENT NO. 8,216,162

17. ABK incorporates by reference the paragraphs above as if fully set forth herein.

18. On July 10, 2012, United States Patent No. 8,216,162 (the '162 Patent") entitled "System for Treatment of Plantar Fasciitis" was duly and legally issued after full and fair examination. ABK is the owner of all right, title, and interest in and to the patent by assignment, with full right to bring suit to enforce the patent, including the right to recover for past infringement damages and the right to recover future royalties, damages, and income. A true copy of the '162 Patent is attached as Exhibit 1.

19. The '162 Patent is valid and enforceable.

20. CVS has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, one or more claims, including at least claims 1 and 4 of the '162 Patent in

violation of 35 U.S.C. § 271(a) because CVS makes, uses, offers for sale, sells, and/or imports certain products, including within this District, at least Target Tape, CVS Tape, and StrengthTape ("'162 Accused Products").

21. The '162 Accused Products satisfy all claim limitations of one or more of the claims of the '162 Patent, including at least claims 1 and 4.

22. Exemplary charts comparing the asserted claims of the '162 Patent to exemplars of CVS's products are attached as Exhibits 4-7.[1]

23. CVS has received notice and actual or constructive knowledge of the '162 Patent and the infringing nature of the '162 Accused Products since at least the date of service of this Complaint.

24. Since at least the date of service of this Complaint, through its actions, CVS has indirectly infringed and continues to indirectly infringe the '162 Patent in violation of 35 U.S.C. § 271(b). CVS has actively induced product makers, distributors, retailers, and/or end users of the '162 Accused Products to directly infringe the '162 Patent throughout the United States, including within this Judicial District, by, among other things, advertising and promoting the use of the '162 Accused Products in various websites, including providing and disseminating product descriptions, product packaging, enclosed product instructions, and other instructions on how to configure and/or use the '162 Accused Products. CVS does so knowing and intending that its customers and end users will commit these infringing acts, including infringement of claims 1, 2, 3, 4, 6, 7, and 8 of the '162 Patent.[2] CVS also continues to make, use, offer for sale, sell, and/or import the '162 Accused Products, despite its knowledge of the '162 Patent, thereby specifically

---

[1] The attached charts are illustrative and provided for purposes of satisfying ABK's pleading obligations and should not be construed as limiting. ABK will serve infringement contentions in this case in accordance with the Local Rules, the Court's orders, and/or the schedule entered by the Court.

[2] ABK does not presently allege indirect infringement of claim 6 of the '162 Patent as to CVS Tape.

intending for and inducing its customers to infringe the '162 Patent through the customers' normal and customary use of the '162 Accused Products.

25. In addition, CVS has indirectly infringed and continues to indirectly infringe the '162 Patent in violation of 35 U.S.C. § 271(c) by selling or offering to sell in the United States, or importing into the United States, the '162 Accused Products with knowledge that they are especially designed or adapted to operate in a manner that infringes that patent and despite the fact that the infringing aspects of the products are not a staple article of commerce suitable for substantial non-infringing use. In addition, the '162 Accused Products include instructions, both on the product packaging and separately included inside of the product packaging, wherein each of the printed instructions is an apparatus for use in practicing the invention of the '162 Patent, and wherein such instructions are a material part of the invention, and wherein such instructions are especially made or especially adapted for use in an infringement, are not a staple article or commodity of commerce, and are not suitable for substantial noninfringing use. CVS is aware that the '162 Accused Products enable end-users to configure and/or use the product to infringe the '162 Patent, including claims 1, 2, 3, 4, 6, 7, and 8. In particular, the product descriptions, product packaging, enclosed product instructions, and other instructions for the '162 Accused Products teach that the '162 Accused Products are especially made or especially adapted for use in an infringement of the '162 Patent. CVS continues to sell and offer to sell these products in the United States after receiving notice of the '162 Patent and how the products' use and/or configuration infringe that patent. In addition, the infringing aspects of the '162 Accused Products can be used only in a manner that infringes the '162 Patent and thus have no substantial non-infringing uses.

26. ABK has suffered damages as a result of CVS's direct and indirect infringement of the '162 Patent in an amount adequate to compensate for CVS's infringement, but in no event less

than a reasonable royalty for the use made of the invention by CVS, together with interest and costs as fixed by the Court.

## COUNT II

## INFRINGEMENT OF U.S. PATENT NO. 8,814,818

27. ABK incorporates by reference the paragraphs above as if fully set forth herein.

28. On August 26, 2014, United States Patent No. 8,814,818 (the '818 Patent") entitled "Disposable Two-Part Orthotic Foot Support, Strap System and Method" was duly and legally issued after full and fair examination. ABK is the owner of all right, title, and interest in and to the patent by assignment, with full right to bring suit to enforce the patent, including the right to recover for past infringement damages and the right to recover future royalties, damages, and income. A true copy of the '818 Patent is attached as Exhibit 2.

29. The '818 Patent is valid and enforceable.

30. CVS has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, one or more claims, including at least claim 15 of the '818 Patent in violation of 35 U.S.C. § 271(a) because CVS makes, uses, offers for sale, sells, and/or imports certain products, including within this District, at least Target Tape, CVS Tape, KT Tape, and StrengthTape ("'818 Accused Products").

31. The '818 Accused Products satisfy all claim limitations of one or more of the claims of the '818 Patent, including at least claim 15.

32. Exemplary charts comparing the asserted claims of the '818 Patent to exemplars of CVS's products are attached as Exhibits 8-15.

33. CVS has received notice and actual or constructive knowledge of the '818 Patent and the infringing nature of the '818 Accused Products since at least the date of service of this Complaint.

34. Since at least the date of service of this Complaint, through its actions, CVS has indirectly infringed and continues to indirectly infringe the '818 Patent in violation of 35 U.S.C. § 271(b). CVS has actively induced product makers, distributors, retailers, and/or end users of the '818 Accused Products to directly infringe the '818 Patent throughout the United States, including within this Judicial District, by, among other things, advertising and promoting the use of the '818 Accused Products in various websites, including providing and disseminating product descriptions, product packaging, enclosed product instructions, and other instructions on how to configure and/or use the '818 Accused Products. CVS does so knowing and intending that its customers and end users will commit these infringing acts, including infringement of claims 15, 19, and 20[3] of the '818 Patent. CVS also continues to make, use, offer for sale, sell, and/or import the '818 Accused Products, despite its knowledge of the '818 Patent, thereby specifically intending for and inducing its customers to infringe the '818 Patent through the customers' normal and customary use of the '818 Accused Products.

35. In addition, CVS has indirectly infringed and continues to indirectly infringe the '818 Patent in violation of 35 U.S.C. § 271(c) by selling or offering to sell in the United States, or importing into the United States, the '818 Accused Products with knowledge that they are especially designed or adapted to operate in a manner that infringes that patent and despite the fact that the infringing aspects of the products are not a staple article of commerce suitable for substantial non-infringing use. In addition, the '818 Accused Products include instructions, both on the product packaging and separately included inside of the product packaging, wherein each of the printed instructions is an apparatus for use in practicing the invention of the '818 Patent, and wherein such instructions are a material part of the invention, and wherein such instructions

---

[3] ABK does not presently allege indirect infringement of claims 19, and 20 of the '818 Patent as to Target Tape.

are especially made or especially adapted for use in an infringement, are not a staple article or commodity of commerce, and are not suitable for substantial noninfringing use. CVS is aware that the '818 Accused Products enable end-users to configure and/or use the product to infringe the '818 Patent, including claims 15, 19, and 20. In particular, the product descriptions, product packaging, enclosed product instructions, and other instructions for the '818 Accused Products teach that the '818 Accused Products are especially made or especially adapted for use in an infringement of the '818 Patent. CVS continues to sell and offer to sell these products in the United States after receiving notice of the '818 Patent and how the products' use and/or configuration infringe that patent. In addition, the infringing aspects of the '818 Accused Products can be used only in a manner that infringes the '818 Patent and thus have no substantial non-infringing uses.

36.     ABK has suffered damages as a result of CVS's direct and indirect infringement of the '818 Patent in an amount adequate to compensate for CVS's infringement, but in no event less than a reasonable royalty for the use made of the invention by CVS, together with interest and costs as fixed by the Court.

## COUNT III

## INFRINGEMENT OF U.S. PATENT NO. 8,834,398

37.     ABK incorporates by reference the paragraphs above as if fully set forth herein.

38.     On September 16, 2014, United States Patent No. 8,834,398 (the '398 Patent") entitled "System for Treatment of Plantar Fasciitis" was duly and legally issued after full and fair examination. ABK is the owner of all right, title, and interest in and to the patent by assignment, with full right to bring suit to enforce the patent, including the right to recover for past infringement damages and the right to recover future royalties, damages, and income. A true copy of the '398 patent is attached as Exhibit 3.

39.     The '398 Patent is valid and enforceable.

40. Since at least the date of service of this Complaint, through its actions, CVS has indirectly infringed and continues to indirectly infringe the '398 Patent in violation of 35 U.S.C. § 271(b). The infringing nature of CVS's inducement of infringement involves, at least CVS Tape, KT Tape, and StrengthTape ("'398 Accused Products").  CVS has received notice and actual or constructive knowledge of the '398 Patent and the infringing nature of the '398 Accused Products since at least the date of service of this Complaint.  CVS has actively induced product makers, distributors, retailers, and/or end users of the '398 Accused Products to directly infringe the '398 Patent throughout the United States, including within this Judicial District, by, among other things, advertising and promoting the use of the '398 Accused Products in various websites, including providing and disseminating product descriptions, product packaging, enclosed product instructions, and other instructions on how to configure and/or use the '398 Accused Products. CVS does so knowing and intending that its customers and end users will commit these infringing acts, including infringement of claims 1, 2, 5, 6, 13 - 17, and 19 of the '398 Patent.  CVS also continues to make, use, offer for sale, sell, and/or import the '398 Accused Products, despite its knowledge of the '398 Patent, thereby specifically intending for and inducing its customers to infringe the '398 Patent through the customers' normal and customary use of the '398 Accused Products.

41. CVS's inducement includes all steps of one or more of the claims of the '398 Patent, including at least claims 1, 2, 5, 6, 13 - 17, and 19.

42. Exemplary charts comparing the asserted claims of the '398 Patent to exemplars of CVS's products are attached as Exhibits 16-22.

43. In addition, CVS has indirectly infringed and continues to indirectly infringe the '398 Patent in violation of 35 U.S.C. § 271(c) by selling or offering to sell in the United States, or importing into the United States, the '398 Accused Products with knowledge that they are

especially designed or adapted to operate in a manner that infringes that patent and despite the fact that the infringing aspects of the products are not a staple article of commerce suitable for substantial non-infringing use. In addition, the '398 Accused Products include instructions, both on the product packaging and separately included inside of the product packaging, wherein each of the printed instructions is an apparatus for use in practicing the invention of the '398 Patent, and wherein such instructions are a material part of the invention, and wherein such instructions are especially made or especially adapted for use in an infringement, are not a staple article or commodity of commerce, and are not suitable for substantial noninfringing use. CVS is aware that the '398 Accused Products enable end-users to configure and/or use the product to infringe the '398 Patent, including claims 1, 2, 5, 6, 13 - 17, and 19. In particular, the product descriptions, product packaging, enclosed product instructions, and other instructions for the '398 Accused Products teach that the '398 Accused Products are especially made or especially adapted for use in an infringement of the '398 Patent. CVS continues to sell and offer to sell these products in the United States after receiving notice of the '398 Patent and how the products' use and/or configuration infringe that patent. In addition, the infringing aspects of the '398 Accused Products can be used only in a manner that infringes the '398 Patent and thus have no substantial non-infringing uses.

44. ABK has suffered damages as a result of CVS's direct and indirect infringement of the '398 Patent in an amount adequate to compensate for CVS's infringement, but in no event less than a reasonable royalty for the use made of the invention by CVS, together with interest and costs as fixed by the Court.

## KNOWLEDGE, WILLFULNESS, AND MARKING

45. ABK incorporates by reference the paragraphs above as if fully set forth herein.

46. The patents identified above are collectively known as the Asserted Patents.

47. CVS had knowledge of the Asserted Patents since, at least, 2015 when CVS sold FasciaDerm and PFTape products, either through CVS stores or Target stores (which CVS acquired), which products were marked with the numbers of the Asserted Patents, or patents which shared common priority with the Asserted Patents.

  

48. To the extent any marking or notice was required by 35 U.S.C. § 287, ABK has complied with the applicable marking and/or notice requirements of 35 U.S.C. § 287.

49. CVS had knowledge of the Asserted Patents since, at least, prior to the filing of this lawsuit when CVS received ABK's letter disclosing and attaching each of the Asserted Patents, and identifying several of CVS's products utilizing claims of such patents which were also identified in ABK's letter.

50. CVS had knowledge of the Asserted Patents since, at least, the filing date of the original complaint in this action.

51. CVS's infringement has been and continues to be willful and deliberate. Upon information and belief, CVS deliberately infringed the Asserted Patents and acted recklessly and in disregard to the Asserted Patents by making, having made, using, importing, and offering for sale products that infringe the Asserted Patents. Upon information and belief, the risks of infringement were

known to CVS and/or were so obvious under the circumstances that the infringement risks should have been known. Upon information and belief, CVS has no reasonable non-infringement theories. Upon information and belief, CVS has not attempted any design/sourcing change to avoid infringement. CVS has acted despite an objectively high likelihood that its actions constituted infringement of the Asserted Patents. In addition, this objectively-defined risk was known or should have been known to CVS. Upon information and belief, CVS has willfully infringed and/or continues to willfully infringe the Asserted Patents. CVS's actions of being made aware of its infringement, not developing any non-infringement theories, not attempting any design/sourcing change, and not ceasing its infringement constitute egregious behavior beyond typical infringement.

## DEMAND FOR JURY TRIAL

ABK hereby demands a jury for all issues so triable.

## PRAYER

WHEREFORE, ABK prays for judgment that:

1. CVS has infringed and continues to infringe, one or more claims of United States Patent Nos. 8,216,162; 8,814,818; and 8,834,398;

2. CVS be ordered to pay damages caused to ABK by CVS's unlawful acts of infringement;

3. CVS's acts of infringement have been, and are, willful;

4. ABK recover actual damages under 35 U.S.C. § 284;

5. ABK be awarded supplemental damages for any continuing post-verdict infringement up until final judgment;

6. ABK be awarded a compulsory ongoing royalty;

7. ABK be awarded an accounting of damages;

8. ABK be awarded enhanced damages for willful infringement as permitted under the law;

9.      A judgment and order requiring CVS to pay to ABK pre-judgment and post-judgment interest on the damages awarded, including an award of pre-judgment interest, pursuant to 35 U.S.C. § 284, from the date of each act of infringement by CVS to the day a damages judgment is entered, and a further award of post-judgment interest, pursuant to 28 U.S.C. § 1961, continuing until such judgment is paid, at the maximum rate allowed by law;

10.     An award to ABK of the costs of this action and its reasonable attorneys' fees pursuant to 35 U.S.C. §285; and

11.     Such other and further relied as the Court deems just and equitable.


DATED: June 2, 2021                                    Respectfully submitted,

                                                       *Robert D. Katz*

                                                       Derek Gilliland
                                                       Texas State Bar No. 24007239
                                                       SOREY, & GILLILAND, LLP
                                                       133 E. Tyler Street
                                                       Longview, Texas 75601
                                                       903.212.2822 (Telephone)
                                                       903.212.2864 (Facsimile)
                                                       derek@soreylaw.com

                                                       Robert D. Katz
                                                       Texas Bar No. 24057936
                                                       KATZ PLLC
                                                       6060 N. Central Expressway, Suite 560
                                                       Dallas, TX 75206
                                                       214,865,8000 (Telephone)
                                                       888.231.5775 (Facsimile)
                                                       rkatz@katzfirm.com

                                                       **ATTORNEYS FOR PLAINTIFF
                                                       APPLIED BIOKINETICS LLC**